good morning your honor may it please the court my name is Luke Garrett I'm counsel for a plaintiff appellant Leslie Jack and with the court's permission I'd like to reserve five minutes for rebuttal I'd like to begin by addressing plaintiffs arguments as they pertain to her claims against Union Pacific first the trial court aired when inconsistent with the standard at summary judgment it evaluated the reliability or credibility of evidence that remained in the record and according and accorded it no weight and specifically that evidence was dr. Brodkin's opinions regarding the asbestos content of materials on Union Pacific premises the air was compounded by the fact that the court did so on a basis that was not advanced by Union Pacific and without notice to plan it for any opportunity to respond in addition the trial court aired when it applied an incorrect legal standard on the issue of foreseeability on the harms of take-home asbestos exposure and it further aired when it failed to give plaintiff the benefit of reasonable inferences from the evidence on that subject now on the subject of dr. Brodkin's opinions dr. Brodkin's opinions were competent evidence that mr. Jack and his father were exposed to asbestos on Union Pacific premises the disclosed basis of those opinions was adequate that those the disclosed basis included mr. Jack's observations of the as chalky and white the disclosed basis further included the time period at issue the use to which those materials were put the way those materials were manipulated and handled literature about asbestos use in a railroad industry as well as the prevalence of asbestos disease among railroad workers and finally a survey regarding asbestos use in another large Railroad that basis is adequate under the case law plaintiffs have identified the both wheeze the where the court said the disclosed basis of an expert need state the basis for his or her opinions but not the underlying details or reasoning and in that case the disclosed basis there was simply a doctor observed cancerous tissue and that was an adequate basis to opine on the cause of that cancer and so the evidence here is in fact more robust than in the both wheeze case now dr. didn't observe the materials himself however you know that's not required for expert opinion and he was relying on mr. Jack's personal observations dr. the basis for dr. Brodkin's opinions here were consistent with other case law addressing expert opinion on asbestos content we identified the canoe case in the Zimco case and finally I'll just note it wasn't controversial it's not truly a controversial issue so we pointed out a defense expert also agreed with dr. Brodkin's opinion and Union Pacific didn't attack dr. Brodkin or dr. Brodkin's opinions on that point before the trial court I'd like to address the Stevens the Union Pacific Railroad case at least briefly it does bear some superficial resemblance to this case as an initial matter that there's a Ninth Circuit case out of Idaho I believe that that case did not address what the basis must be for an expert to opine on asbestos content it's silent on that issue it just doesn't speak to it the decisive issue in that case was causation and on that point the court employed a employed Idaho law which conflicts materially with Washington law on that issue in Stevens under Idaho law the court said that plaintiffs needed to show a substantial exposure for an substantial period well Washington law has a lower threshold for causation for sufficiency of causation evidence for example a plaintiff need not quantify the exposure need not apportion fault and when you say it need not be quantified I it seems to me unless I misunderstand it the decedent visited his father at the Union Pacific premises only perhaps twice a year am I wrong about that no I believe that's correct it was that isn't that so tiny a that that causation is not a reasonable inference from under Washington well presence on UP's property under Washington law your honor that is that that is sufficient for cause the causation issue to go to the jury and I would point out the even in the face of even in the face of the other exposures later in life and other in other ways there's no Washington case by decided by a Washington Appellate Court that would hold that your honor if if I spent 10 minutes at this property 42 years ago and can I get to a jury your honor at some point it would presumably go to de minimis but I'm asking why isn't why isn't this de minimis given how long ago it had been and how very very brief these encounters were even if you credit that whatever was white and chalky was in fact asbestos well your honor among other things that believe the evidence was that this would have been amicide asbestos which would have been more potent in addition I would point the court to well the overall exposure from Union Pacific is not related to the visits to the property itself but also the take-home issue well that's analytically that's separate isn't it well I think the issue is is whether Union Pacific's negligence was approximate cause of mr. Jack's disease and I don't think the court can carve out and say well this exposure wasn't enough by itself this exposure wasn't enough by itself I think the court the the finder of fact needs to look at that cumulatively the fault from any one defendant otherwise you know you could have eight exposures none of which are sufficient on themselves but collectively they are on the take-home exposure under Washington law because Washington law as you know incorporates the component of duty within the foreseeability and so the foreseeability of it would seem to me you need to be foreseeability of a long line of it seems potential speculation there to get from where you start to where Washington law requires you to end in order to have foreseeability so I'd appreciate your analysis of that well your honor for starters Washington law and I believe Union Pacific agrees that it would employ a general field of danger test to the subject of foreseeability and it's the mechanism need not be foreseen the specific harm need not be foreseen I think the Levy Willis case actually illustrates that pretty well the you know the mechanism of harm wasn't foreseen the type of injury wasn't foreseen the person who might be injured wasn't foreseen but the court held it was still foreseeable that you know a person would be injured if there it was enough that careless behavior around high-voltage equipment was dangerous and I think that I think that the Lockwood case it is is clear on that or indicates as much it's held that a danger to one class of persons can be inferred from known danger to a different class of persons and that's analogous to the inference that we seek here that the dangers of take-home exposure from you know one set of substances are known to be hazardous from that you could infer that a different substance could be brought home on clothing and be asbestos but no I don't believe at all that the washing that Washington law supports the notion that you need to look at the particular hazard and the particular substance Washington law says if if there is foreseeability of one substance that it incorporates all potential substance hazardous no no your honor that's not my argument well to the extent that I mean it's hard for me to talk hypotheticals of what the outer boundary is but um but that asbestos dust to the extent that it's obvious it would cling to close it would fall within that general field of danger again the specific mechanism and injury need not be foreseen I think that that's clear under Washington law I would also point out that in this case there's evidence that was not discussed in Hoyt for example in the record there's evidence that there was a leading cancer authority had written an article in the Journal of the American Medical Association in 1946 indicating that workers handling carcinic carcinogenic materials such as asbestos should have showers and special rooms for storing street clothes given reasonable inferences from the evidence that would suggest that that would impart to endanger persons who might encounter those that substance as it left the left the work site that was not discussed in for example the Hoyt case this court did that excuse me did that article specify that it was to protect others or was it to protect the worker because the worker is closest to his or her own skin and clothing so was it specifically arguing that there was a danger to others or is that your inference your honor I don't believe the record at summary judgment specifies in that instance no I'm asking about the scientific article that you're talking about in 1940s I don't believe the record here specifies I don't off I don't actually know off the top of my head I apologize I know the record which doesn't specify that but I think that that is a reasonable inference I'd point to I think it's a California case the Kessner case that says that it didn't interpret that specific issue but it interpreted Department of Labor guidelines whereas I think the court here said well that was just for the workers but no the California court said well it was reasonable to infer that that would be not just the workers but others as well and at summary judgment plaintiff is entitled to the benefit of reasonable inferences from the evidence judge what would have alerted UP at that in 1955 that it was reasonably foreseeable to take the worker taking home his clothes well your honor to the the family well your honor it was known the asbestos was a hazardous substance it was established at the time in newspapers textbooks government publications medical journals that toxic substances could leave the workplace on clothing and in various mechanisms including on clothing and cause harm it is a simple application of logic and common sense to that that that could also apply to asbestos I would indicate again that 1946 Journal of American Medical Association article which addressed the need to change out of clothing before leaving the work site specific to asbestos I know there's a Washington case and of course like our court that you have the unpublished and published in the Washington system but there there is an unpublished case in the Washington Court of Appeal a couple years back of Brandis versus brand insulation and it talks and you're probably familiar with that because I know you're quite familiar with these issues but it talks about that a much later period of course but it links the liability to the fact that the studies at the time linked the diffusion to family members not so you're you're like one one click back from that it seems to me at a minimum why why isn't that analysis that they employed there similar to what we should look at here well your honor I don't believe that they said that anything less would have been inadequate I don't necessarily remember the precise details of that but I would indicate that again the general field of danger test that everyone agrees applies doesn't look to the specific product doesn't look to the specific harm its application of logic and common sense as I indicated the Kessner court looked at some of these and said it's fair to interpret that that would also impose a danger on on others in the workplace I would like to attention I think judge McKeon you're talking about the series of inferences I'd like to just call the court's attention to the Allen case decided by the Washington Court of Appeals it's that case the evidence of exposure and causation consisted of three sales records in three consecutive years for large amounts of asbestos cloth from that the Washington Court of Appeals held that they could infer first of all that that cloth had even been used in the shipyard in the first instance second of all that the father who worked somewhere in the shipyard would have encountered that asbestos from that product further inferred that he would have brought it home further inferred that his son would have been exposed and further inferred that that is sufficient to cause the son's lung cancer which incidentally requires significantly more asbestos than mesothelioma and that was sufficient causation evidence in that case that may very well be the outer bound but I think on causation where we're well inside of that I'm happy to address further Union Pacific issues but I'd like to turn to the Ford and DECO arguments before I'm out of time with respect to Ford and DECO on Miss Jack's negligence claims five of nine jurors would have found for Miss Jack nevertheless the trial court decided that no reasonable juror could reach us such a conclusion that was there Washington Supreme Court let me ask you quickly if I've misunderstood your theory as I understand it your theory really is that Ford and DECO should have warned the decedent so that he would take precautions at a different location at the naval shipyard and I is there evidence that the decedent knew that asbestos was present at the naval shipyard your honor I believe mr. Jack testified that he was not aware that asbestos was at the shipyard I think it is ask you about the logic of that then suppose they had warned him and said you know assuming that you have a duty to warn somebody about somebody else's location in the first place which I have some question about also but suppose they'd said now be careful if you ever go to work with asbestos again you know because you've been exposed to it with us if he didn't even know then what possible causation is there well your honor to two points here well there's several points the first being that if Ford had gone or DECO had gone to mr. Jack and said you've used our products you may very well been exposed to asbestos asbestos may kill you it's very important you avoid future exposures with mr. Jack's indication that he wanted to take precautions he wanted to protect himself it's a reasonable inference that he would have inquired into asbestos and once a continuing duty to warn applies well let me just say this so where is there a duty this is what bothers me where where is there a duty to warn about other people and if you have a dangerous product in your own workplace or you supplied it to someone I understand that there's a duty to say or potentially there's a problem with this but do you have to then go through a or so the duty is not to warn of all products and all persons that sort of thing the duty is that the manufacturers must conduct themselves reasonably the duty is explained in the Washington Supreme Court's case in Lockwood where they said if the danger from a product continues after direct exposure there's a duty of reasonable care to warn if that warning could reduce or lessen the asbestos manufacturer may have a duty to warn about not you know that the people exposed to their products shouldn't smoke and frankly that is a farther step away from warning about further asbestos exposures because it is an entirely different product the court characterized it not as warning about someone else's products but giving a warning so that you can take precautions to avoid to prevent manifestation of the harm from the defendants products if you if you get further asbestos exposure you're more likely to develop the mesothelioma which is the underlying risk from the exposure in the first place I think that's it I mean the trial court found issues with respect to the reasonableness and causation but with respect to the actual duty I think it's very clear under Washington law and that the warning about further asbestos exposures is well within the Lockwood case which says that they had an this there's there was evidence in the record well about a variety of precautions and some of them are quite simple dusting yourself off before you leave the workplace where there's asbestos showering changing clothes even just avoid trying to avoid dust in addition to respiratory protection under Washington law causation may be established if the negligence of if the negligence of a defendant contributed to some portion of the injurious exposure again it's not necessary to quantify it's not necessary to a portion fault a jury could have looked at that you're down to a little over a minute did you want to save that for rebuttal I would I'll just say that a jury could look at if mr. Jack had showered if he dusted himself off if you just try to avoid dust that would have reduced his injurious exposure and could and that is adequate under Washington law to sustain a verdict on causation and I'd like to you can do this in any order you wish but on my list mr. Riley for Union Pacific would speak next yes good morning my name is Carl Riley with cousin O'Connor and I represent Union Pacific Railroad Company before I start who want to say that our deepest sympathies for the particular loss in this matter this court should affirm the district courts denial of the motion for reconsideration for two basis first no genuine issue of material fact existed that the Union Pacific property contained asbestos containing products second if there were any type of indication of asbestos on the property no particular take-home exposure liability existed because no duty existed regarding no duty existed regarding any type of take-home liability before I get started on my point I want to go over the particular review in this case because there is a denial of a motion consideration this court reviews for abuse of discretion not de novo there is no genuine issue material fact that the Union Pacific property lacked asbestos containing materials there's no evidence of large purchases of asbestos that is very indicative in the Allen case as was stated by appellant there's no evidence of co-workers testifying as to the working conditions of the Union Pacific property further there is no particular evidence of witnesses or anyone with a requisite foundation to testify that they were asbestos containing product on the Union Pacific property this is evidenced by Morgan V Aurora and also the Lockwood case where there has been objective evidence of asbestos on the property before the expert can opine as to any particular level of exposure appellant is unable to separate this case from any other Washington case that provides the existence of asbestos containing products on the property now appellant tries to distinguish Stevens from the incident matter and we believe that he cannot do so in Stevens plaintiff provided the exact same testimony that is here that the workplace was dusty and that's particularly that's all the layperson is able to testify cannot provide expert testimony in Stevens there were two experts who particularly provide that there was substantial exposure and that the father the plaintiff's father was exposed to had substantial exposure to asbestos but there is no in different in Stevens there was actually an admission by the particular road that there was asbestos on the property here there's no evidence of any type of asbestos containing products in on the particular site that is what that is the difference here even taking that difference the Ninth Circuit held that this was insufficient to the expert was insufficiently opining as to the particular exposures that occurred there specifically the experts in Stevens provided that plaintiff had substantial exposures but had no knowledge of the degree to which plaintiff's father was exposed to this business work here likewise dr. Bracken testified that he did not have any knowledge outside of what was provided by plaintiff as to what the roles of appellant's father was at Union Pacific Ninth Circuit held that this was particularly insufficient specifically said that although plaintiff testified that the work site was dusty on plaintiff's visits there that does that the courts evaluate and expert peer-reviewed opinions here in this case there's no evidence of any of that we have no prior instances of any type of take-home exposures that Union Pacific should have been a lot should have been aware of no worker policies and no particular legislative indications that take home live take home exposure liability was evident as of and what this is important here 1955 we can't cannot look at it at the lens in 2021 we have to look at it in 1955 and that's very very important here now the difference between the articles that are cited by appellant and what was indicative of their own expert has said there's no peer-reviewed articles until 1960 is those particular instances and articles were really focused on the taking the employee and coming home and exposing the family this is I won't go into an example but the asbestos at that point of time is really knowledgeable and known only in focusing on the employee it looks like the clock is back to zero so we have one minute no you are you for your full 10 minutes okay thank you thank you very much and if you put five minutes on the clock for mr. Burgess I believe he will be next thank you your honor Brian Burgess for deco wait five minutes please the clock is freezing up so I can I can I mean I know you can see it but I can't control it oh okay well you will just rely on you to holler when holler when you're down to about a minute so mr. Burgess can start okay will do thank you your honor following the jury jury verdict in this case plaintiffs are no longer asserting that Victor gaskets are themselves unreasonably dangerous or otherwise taking issue with the adequacy of the warning at the point of sale suggesting that it had any effect on mr. Jack instead they're relying entirely on the unusual theory that if deco and Ford had that somehow it might have led him to avoid exposure from other asbestos products at his workplace at the shipyard over a period of years we've explained in our brief why we think that theory fails for several reasons I'd like to focus today on one and it was the theory or the issue your honor judge Graber I'd identified as the district court noted in this case cleanest causation theory is inherently speculative in mr. Jack testified and I earlier to be it to be undisputed that mr. Jack was unaware of the presence of any asbestos at the shipyard during his relevant exposure period so there's simply no evidence in the record to suggest that he would have taken any measures if he had been given a standard warning about automotive gaskets because he didn't know about asbestos at the shipyard much less what those measures would have been or whether they would have been successful and again I don't much of that to be undisputed they don't disagree that mr. Jack didn't have that knowledge they had they did not suggest in their briefing that warning a standard warning about automotive gaskets or even about the risks of asbestos generally could have had that effect instead they're relying on an expansive and unprecedented theory of legal duty that a manufacturer would have the obligation to educate its former customers about asbestos risk in other products and other industrial settings as we pointed out in our brief they didn't develop that theory below and I didn't see them in their reply brief to take issue with our waiver point on that but even even on the merits of it it's legally baseless Washington law is clear that a manufacturer generally has no duty to warn about asbestos and other companies products that's it's well established Washington law it's well established common law and it makes eminent sense the idea of duty to warn is that a manufacturer is in the best position to know about the risks that its product might create and to investigate and provide the resources to give an adequate warning but there's no reason for an automotive manufacturer to have knowledge about where asbestos is likely to be found and where there's gonna be a likely risk at a shipyard or many of the other places in the economy where asbestos could be found I I understand the other side in resisting that conclusion to rely pretty exclusively on Lockwood I just submit that Lockwood does not support their broad reading and the duty that they would create the actual issue in Lockwood was simply it was an evidentiary question about whether it was appropriate to admit evidence of danger risk that was acquired at post sale post-exposure and the court held yes it was because asbestos is unique and that there are latent risks and so if the plaintiff could put on evidence that if he had been warned about it he might have taken actions in his life to avoid that risk but there was no indication in the opinion that the manufacturer was required to provide warnings about tobacco products generally and even if you took on the idea that there might be some limited circumstances in which you could have a duty to written to warn because there's a synergistic risk created by use of your product and another product if there was a record developed about that that a manufacturer knew about that information would plaintiffs are seeking here goes well beyond that because there would require a manufacturer to know all the different sort of products and industrial circumstances in which asbestos might be found and of course for Mr. Jack it involved a shipyard and well counsel I think I think it perhaps you're overstating their argument as I understood it the argument is that the out in any future employment situation whether there's asbestos because if so you're at greater risk for having been exposed to ours and they wouldn't really have to know anything about where you were going or what those locations were like I mean I read their briefing differently to suggest that there is a duty to educate the surface I read the briefing differently too but I understood the oral argument today to be a slightly more subtle version perhaps sure I guess in response to that there was not that that argument was not developed below there's not an evidentiary record that mr. Jack suggested that if he'd received such a warning that he would have taken those measures and in fact when he actually learned about asbestos at the shipyard in the mid 80s the record is that he did not do any of the things plaintiffs suggested he might have done whether wearing a respirator or a mask he that was not part of the training so to suggest that if he had learned this those measures just as pure speculation and for that reason we think the court needs to affirm thank you counsel we're ready for five minutes on the clock which happily seems to be working for mr. Batalden if I hope I haven't mispronounced that no that's correct thank you your honor good morning Petter Batalden appearing on behalf of Ford Motor Company like deco which my ruling issued by the district court and as your questions have probed and as mr. Burgess has said there is simply no evidence in this record that mr. Jack knew that there was any asbestos at the shipyard and so it's unreasonable to infer that he could have taken any precautions had he wanted to and I think I don't need to discuss that any further mr. purchase hat I do want to talk about an additional reason that the district court identified to support its rule 50 be ruling this is an independent reason to affirm the judgment for Ford and that is that there's no evidence that any precautions Jack could have taken at the shipyard would have been effective and it's one thing to talk as mr. Garrett has about dusting oneself off taking a shower wearing a mask or a respirator but it's another thing to show through expert scientific testimony that those precautions would have made a difference and the record here is silent on that point let us introduce no expert evidence to show the precautions Jack could have taken at the shipyard would have been effective the only evidence on that subject comes from Ford's expert who properly noted that it was very uncertain it was speculative whether any precautions would have been effective you know if you're talking about let's say a respirator you have to have it fit tested it has to fit snugly and you have to use a change-out cartridge program to the benefits of filtering if you're talking about another precaution maybe it's a ventilation hood it has to be placed in a location where it's adequately going to capture the exposure that the Jack is is receiving rather than having it being placed in a different location where he's not working and if you're on a ship where you sometimes worked that's very difficult so there simply is no evidence that any precautions Jack could have taken would have been effective between that and the fact that mr. Burgess discussed he didn't know there was asbestos at the shipyard I think the overwhelming inference from this record as the district court found is that the plaintiffs failed to prove causation there are simply too many evidentiary gaps in their effort to prove causation I'd like to touch on two other points briefly before I conclude mr. Garrett began by noting that there were some jurors who had announced apparently after the trial how they would have I'm not aware of any authority I don't think mr. Garrett has supplied any authority today or in his brief that that is a permissible consideration in determining the impact of the product's liability verdict for forward on the negligence claim you know if anything that runs headlong into the spirit of federal rule of evidence 606 B which which forecloses inquiry into the mental processes of jurors so I don't think that's an appropriate consideration for the court I also want to touch on the question I think judge Graber you asked I'm sorry it was a question it was a point mr. Garrett made that had had mr. even though mr. Jack did not know about asbestos at the shipyard he it was reasonable to infer that because he wanted to take precautions he would have inquired had he been given a warrant he would have made some further inquiry and I want to make two points about that first that just contorts the burden of and places it on Ford when in fact it's the plaintiff's burden to show causation Ford doesn't have to disprove which is an effect what you're saying if Jack is required to inquire having been given only the briefest hint of knowledge that there's asbestos and second that really doesn't make any sense to believe that there would that he would have inquired had he been given a warning when the products without warning were appropriately safe and that after all was the products liability verdict for Ford both on a design theory and on a failure to warn theory the jury found that Ford's products were reasonably safe unless there are any further questions from the court I just have a question about that because the standard the legal standard for demonstrating products liability and the legal standard for demonstrating negligence different so I'm not sure that there's an equivalence of the kind you were just trying to draw that the that the jury's verdict on one essentially forecloses a different verdict on the other your honor what I would say about that is that the same causation instruction governed both claims in this case there was a products liability failure to warn claim that's not what you said you said it it had to do with whether the product was sufficiently safe and whether a warning was required and if so what kind and that's not the same as causation that's why I asked the question I'm sorry yeah I think that this gets to the effort to reconcile the verdict which is an alternative argument for affirmance that we made in the brief this court is welcome to address that if it wants but it can certainly affirm on the JMO ruling that the district court gave but just briefly there are only two ways to construe the verdict in Ford's favor one is that the product was reasonably safe the other is that the plaintiff's failed to prove causation and it can't be you have one way or the other for it has to prevail on negligence because if if the jury found no causation as to the products liability claims it couldn't have found causation as to negligence they were both failure to warn claims under the same instruction thank you mr. Garrett I believe you have a little bit of rebuttal time remaining wait a sec let's wait for the clock to go where it needs to go okay thank you your honor I'll begin by noting as Ford even concedes in its briefing the strict liability verdict does not establish that the product was reasonably safe at the time of sale as we've pointed out it could very well been that the jury found that it failed on the proximate cause issue which again is different that what must be approximate causes the product in a strict liability claim versus the negligence in the negligence claim on the issue of causation I'll note that I think it is the Morgan case where the testimony was that the overall shipyard exposure was the cause of an individual's disease and that was sufficient to sustain a verdict for one manufacturer of one subset of the testimony that counsel for Ford is suggesting should be required just is not required under Washington law it's enough that if a defendant is responsible for an injurious exposure we're not appealing reconsideration Union Pacific's arguments generally go to the weight of the evidence and should go to the jury expert opinion is evidence and finally counsel for Union Pacific hat does not dispute or at least hasn't today that the standard under Idaho and maritime law is materially different for causation than under Washington law thank you your honor thank you very much counsel the case just argued is submitted and we appreciate helpful arguments from all four of you so with that submission we're going to take about a five minute break before hearing the last case on this morning's docket
judges: McKeown, Graber, Paez